MUTUAL LIFE INSURANCE COMPANY v. LEAKSVILLE WOOLEN MILLS, JAMES S. PATTERSON, BY ANNIE K. PATTERSON, GUARDIAN.

(Filed 22 November, 1916.)

**1. Appeal and Error—Issues—Trials.**

Issues submitted to the jury for their determination of the matters involved arising from the pleadings and evidence are not reviewable on appeal when they are so framed that the parties have opportunity to present thereunder every material phase of their contention.

**2. Insurance—Witnesses—Policyholders—Interest.**

Where a policy of life insurance is sought to be set aside for material misrepresentations made by the insured in answering the questions contained in his application therefor, testimony of a physician, a policyholder, affecting the alleged misrepresentations, is not objectionable on account of interest, the interest to disqualify being that in the result of the action; and such as he has, if any, falls under the doctrine of *de minimis non curat lex.*

**3. Insurance, Life—Application—False Representations—Material Representations—Contract—Judgment.** •

Where the application made by the insured for a policy of life insurance declares that the statements the applicant makes below are true and offered to the company as an inducement to issue the proposed policy, and following the questions and his answers, he certifies that he has read them, and that they are fully and correctly recorded, and there

is no evidence that the company or its agents were aware of any facts to the contrary, all of the misrepresentations made as to the prior attendance of physicians, disease, surgical operations, and the like, are deemed material; and where their falsity has been established by the verdict of the jury, a further issue finding they were not material should be set aside and the policy declared invalid as a matter of law, with judgment accordingly, but upon condition that the company return the payments for premiums thereon it has received, with interest.

### 4. Same—Opinion—Questions for Jury.

Where the applicant for a policy of life insurance declares his answers to the questions asked in his application are material and true, and it is made to appear that he has therein misrepresented facts relating to disease, attendance of physicians, and surgical operations performed on him, the matters so misrepresented are material under the contract of the parties, they must have been known to the applicant at the time, and do not call for the exercise of his opinion, requiring the jury to pass upon an issue as to whether the deceptions were intentional, or made by mistake in good faith, or otherwise.

Two civil actions consolidated and tried as one at February Term, 1916, of Superior Court of ROCKINGHAM, before *Webb, J.,* upon these issues:

1. Did J. Sanford Patterson represent in his application for the insurance policies sued on that he had had no illnesses, diseases, injuries, or surgical operations since childhood, except fracture of the femur in 1885? Answer: "Yes."

2. Was the said representation true? Answer: "No."

3. Did said J. Sanford Patterson represent in his application for the insurance policies sued on that he had not been prescribed for or treated by or had consulted any physician or practitioner in the past five years before the date of said application? Answer: "Yes."

4. Was the said representation true? Answer: "No."

5. Did the said J. Sanford Patterson in said application for the insurance policies sued on represent, in answer to the inquiry in that behalf, that he had stated all illnesses, diseases, injuries, or surgical operations which he had had since childhood? Answer: "Yes."

6. Was said representation true? Answer: "No."

7. Did said J. Sanford Patterson, in answer to an inquiry in that behalf, state that he had named every physician and practitioner consulted by him in five years next previous to the said application, with dates of consultation? Answer: "Yes."

8. Was said representation true? Answer: "No."

9. Did Dr. W. E. Reaves on or about 29 July, 1913, perform surgical operations on said J. Sanford Patterson for ethmoiditis and maxillary sinusitis? Answer: "Yes."

10. Did Dr. W. C. Banner, on or about 15 May, 1909, perform a surgical operation on the said J. Sanford Patterson for polypus? Answer: "Yes."

11. Did the said J. Sanford Patterson consult Dr. W. P. Reaves, a physician, within five years prior to the date of his application for the policy sued on? Answer: "Yes."

12. Did the said J. Sanford Patterson consult Dr. C. W. Banner, a physician, within five years prior to the date of his application for the policy sued on? Answer: "Yes."

13. Were the said representations material to the risks applied for to be assumed? Answer: "No."

Upon motion of plaintiff, the court set aside the finding on the thirteenth issue and held as matter of law that the representations were material, and rendered judgment cancelling the two policies of insurance upon return of the premiums paid thereon, with interest. Defendants appealed.

*James H. Pou, H. R. Scott, King & Kimball for plaintiff.*
*Pharr & Bell, Ivie & Trotter, Lindsay Patterson for defendants.*

BROWN, J. The purpose of the action is to cancel two policies of insurance issued by plaintiff upon the life of James S. Patterson, one for the benefit of his estate and the other for the Leaksville Woolen Mills.

The principal question presented upon this appeal relates to the effect of the statements made by the insured in his applications for the insurance. It is contended that these statements constituted a part of the contract, were material to the risk, and, being untrue, void the policies.

The defendants excepted to the issues and tendered others. It is well settled that the discretion of a trial judge in settling issues is not reviewable, provided they are so framed that the parties have opportunity to present every material phase of their contentions. *Cunningham v. R. R.,* 139 N. C., 427; *Redmond v. Mullenax,* 113 N. C., 505.

The issues submitted present every controverted fact necessary to a decision of the case, while those tendered by defendants are very general in their terms and not so well calculated to focus the minds of the jurors upon the exact facts alleged on one side and denied on the other as those submitted by the judge.

The defendants excepted to the testimony of Dr. Sweeney upon the ground that he is a policy-holder in plaintiff company and James S. Patterson is insane. The testimony of witness is material and relates to transactions with Patterson in regard to the applications for the

policies. He is not so "interested in the event of the action" as to disqualify him. The interest which disqualifies is a legal and pecuniary interest, *Jones v. Emory,* 115 N. C., 163, and it must be in the *event* of the action. *Bunn v. Todd,* 107 N. C., 266; *Mull v. Martin,* 85 N. C., 406; *Helsabeck v. Doub,* 167 N. C., 205.

The rights of the witness as a policy-holder were not affected, so far as the evidence discloses, by the result of this action. His policy was subject to forfeiture for nonpayment of premiums and to many other contingencies usually provided in such instruments. He had no interest in the event of this action, or, if so, it is so infinitesimally small as to be impossible of ascertainment, and comes within the maxim, *De minimis non curat lex.*

It is unnecessary to discuss the many other exceptions relating to the evidence, as we think they are without merit and unimportant in the view we take of the case. The facts are practically undisputed and the verdict of the jury upon the issues submitted could not well have been otherwise.

Before either of the policies were issued the insured signed an application which contained the following language: "All the following statements and answers, and all those that I make to the company's medical examiner in continuation of this application, are true and are offered to the company as an inducement to issue the proposed policy. I especially waive, on behalf of myself and of any person who shall have or claim any interest in any policy issued hereunder, all provisions of law forbidding any physician or other person who has attended or examined me, or who may hereafter attend or examine me, from disclosing any knowledge or information which he thereby acquired."

The application contained a report to be made by the medical examiner. The questions were to be propounded by him to the applicant and answered by the latter.

At the end of the statement to the medical examiner is the following certificate of the insured:

I certify that each and all of the foregoing statements and answers were read by me, and are fully and correctly recorded by the medical examiner.                    JAMES SANFORD PATTERSON.

Upon the faith of this application and these answers, and on the report of the medical examiner, plaintiff issued and delivered the policies in August, 1913, and the defendants paid the first premium.

There is no evidence whatever that plaintiff or its agents knew of any facts contrary to those stated by insured in his application.

The jury found that the representations alleged to have been made by the insured were made by him to plaintiff's medical examiner, and that each and every of said statements were untrue. The jury found that on or about 29 July, 1913, Dr. W. P. Reaves performed a surgical operation on insured for ethmoiditis and maxillary sinusitis; and that on or about 15 May, 1909 (within the period of five years), Dr. W. C. Banner performed a surgical operation on the said insured for polypus; and that the insured did consult Drs. Reaves and Banner.

It appears in the evidence of defendants' witness that the insured is now in the State Hospital in a hopeless condition brought about by a chronic disease of long standing.

The court committed no error in setting aside the verdict upon the thirteenth issue and rendering judgment upon the other findings for plaintiff.

The materiality of the representations is not open to dispute. It does not depend upon inferences drawn from facts and circumstances to be proved, in which event the question is one for the jury. A different rule prevails where the representations are in the form of written answers made to written questions. In such case the questions and answers are deemed to be material by the acts of the parties to the contract. *McEwen v. Life Ins. Co.,* 139 Pac., 242. It is not necessary that the misrepresentation should be intentional. "The company is entitled to have the policy canceled on bringing suit within the proper time, especially where, even though the misrepresentation was not intentional, the policy when delivered plainly discloses the untruthfulness of the representation." *Life Ins. Co. v. Houpt,* 113 F. R., 572; *New York Life Ins. Co. v. Fletcher,* 117 U. S., 519.

This case is cited with approval by this Court in *Alexander v. Ins. Co.,* 150 N. C., 538.

The most recent decision on this point is the case of *Mutual Life Ins. Co. of New York v. Hilton-Green and others,* decided by the Supreme Court of the United States, and reported in the Supreme Court Reporter Advance Sheets, vol. 36, No. 16, pages 624 to 728, where the identical questions here were asked and the policy invalidated. *Mr. Justice McReynolds,* speaking for the Court, said: "Considered in the most favorable light possible, the above quoted incorrect statements in the application are material representations, and, nothing else appearing, if known to be untrue by assured when made, invalidate the policy without further proof of actual conscious design to defraud."

In that case there was verdict and judgment against the insurance company in the court below, which was reversed.

The same doctrine is laid down in *Jeffries v. Ins. Co.,* 22 Wall., 47. There the Supreme Court of the United States said: "The proposition

at the foundation of this point is this, that the statements and declarations made in the policy shall be true. There is no place for argument either that the false statement was not material to the risk or that it was a positive advantage to the company to be deceived by it. . . . The company deems it wise and prudent that the applicant should inform them truly whether he has made any other application to have his life insured. . . . The same is true of its inquiry whether the party is married or single. The company fixes this estimate of its importance. The applicant agreed that it is thus important by accepting this test. It would be a violation of the legal rights of the company to take from it its acknowledged power thus to make its own opinion the standard of what is material, and to leave that point to the determination of a jury. The jury may say, as the counsel here argues, that it is immaterial whether the applicant answers truly if he answers one way, namely, that he is single, or that he has not made an application for insurance. Whether a question is material depends upon the question itself. The information received may be immaterial. But if under any circumstances it can produce a reply which will influence the action of the company, the question cannot be deemed immaterial."

The same Court in the case of *Ætna Life Ins. Co. v. France*, 92 U. S., 512, said: "We decided in the case of *Jeffries v. Ins. Co.* that the question of materiality of the answer did not arise; that the parties had determined and agreed that it was material; that their agreement was conclusive on that point; and that the only questions for the jury were, first, was the representation made? second, was it false?"

The same doctrine is laid down in *Mouler v. Ins. Co.*, 111 U. S., 335; *Ins. Co. v. Roddin*, 120 U. S., 189; *Ins. Co. v. Moore*, 231 U. S., 543; May on Ins., sec. 181.

The decisions of this Court are in conformity with the decisions above referred to. In *Bryant v. Ins. Co.*, 147 N. C., 184, this Court held that the answers to specific questions like those asked here are material as a matter of law. *Gardner v. Ins. Co.*, 163 N. C., 367; *Alexander v. Ins. Co.*, 150 N. C., 536; *Schas v. Ins. Co.*, 166 N. C., 55; *Powell v. Ins. Co.*, 153 N. C., 124 and 128; *Hardy v. Ins. Co.*, 167 N. C., 22; *Lummus v. Ins. Co.*, 167 N. C., 654.

Nothing herein contravenes the well settled doctrine that where a question is asked which must be necessarily answered by *an opinion*, the mistake of the applicant in answering such question, made honestly and in good faith, will not avoid the policy. This is not so, however, where the questions asked relate to facts within the knowledge of the applicant and not within the knowledge of the company, and where

the questions and answers are material. In such case the applicant must answer truthfully. The purpose of such questions is twofold: first, to elicit information, which the company regards important; second, to give the sources from which the company may obtain further information. The parties themselves have made these questions and answers material. Their materiality depends not only upon their own purport, but upon the fact that the contracting parties have agreed that the written application containing these questions and answers is the basis upon which the contract of insurance shall be made or refused.

No error.