YARRUT, Judge.
This is an appeal from a judgment in favor of Defendant, dismissing Plaintiff’s suit to recover $1,000.00 as beneficiary of a life insurance policy on the life of her deceased husband. The policy was issued December 1, 1963, to Plaintiff’s husband, who died two months later (January 30, 1964).
Defendant denied liability because the application for the policy contained material false negative answers to the questions viz.:
“15. Have you ever had, or been told that you had, or been treated for, or sought advice concerning:
(g) Diabetes; disease of the kidneys?
“16. (c) Have you any other physical defect or impairment of health?
“17. During the past five years, have you had any disease, ailments, or injuries not described elsewhere on this application which required treatment, examination, or advice by a doctor or at a clinic, hospital, dispensary or sanatorium?”
Both parties stipulated that the insured had been confined in a hospital from June 2, 1961 to June 8, 1961, for treatment of a kidney disorder; that any representation by the insured that he had not been so hospitalized constituted a false statement which materially affected the acceptance of the risk assumed by Defendant; and that Defendant would not have issued the policy had it known of this ailment and confinement.
Defendant relies on LSA-R.S. 22:619 (B):
“In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity of any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer(Emphasis added.)
Plaintiff contends the above statute docs not apply because her husband told the agent who filled in the application about his hospitalization for the kidney disorder; that the agent filled in the false negative answers on the application without her husband’s knowledge, for which reason the insurer can not rely on the falsity of the answers to avoid liability.
Defendant, on the other hand, contends that its agent recorded the answers just as they were given by the insured and, even if the misstatements were made by its agent, the application provides that no statement made by the insurer’s agent would be binding upon the insurer unless it was included in the written application; that the policy issued to, and in the possession of, insured at the time of his death expressly drew insured’s attention that the application was attached to the policy, thus charging him with knowledge of the misrepresentations.
The Trial Court rendered judgment for Defendant, dismissing Plaintiff’s suit, reserving to Plaintiff the right to recover the *905 $13.04 premiums paid, deposited in the registry of the Court.
Plaintiff and her daughter testified they were present when the application was executed and heard insured tell the agent that he had been confined in Flint-Good-ridge Hospital for kidney trouble and high blood pressure. On the other hand, the agent testified that insured said nothing about the hospitalization. The Trial Judge stated he was “inclined to believe the testimony of the Plaintiff and her daughter, rather than that of Defendant’s agent,” and in his reasons for judgment held:
“ ‘The jurisprudence of this State and the law generally prevailing is that if an application for insurance is drawn by an agent of the insurer, who fills in false answers to the interrogatories contained therein, which are truthfully answered by the insured, where the latter acted in good faith and had no knowledge that his answers were not correctly recorded, and in the absence of circumstances from which constructive knowledge of falsity might be imputed to him, the insurer cannot rely upon the falsity of such answers in seeking to avoid liability under the policy issued upon the application.’ Harris v. Guaranty Income Life Ins. Co., 226 La. 152, 75 So.2d 227, Hardy v. Commercial Standard Ins. Co., 172 La. 500, 134 So. 407; Willhite v. Hartford Fire Ins. Co., 8 La.App. 538; Parker v. Citizen Fire Ins. Co., 4 La.App. 711; 29 Am.Jur. 643-44; ‘Insurance’, 846, Note 18; 117 A.L.R. 790, 792; Beene v. Southern Casualty Co., 168 La. 307, 121 So. 876.”
citing Telford v. New York Life Insurance Co., 227 La. 855, 80 So.2d 711. 713.
However, the policy in question contained the following provision:
“The Contract — This contract is made in consideration of the payment of premiums as specified in this policy. This policy and the application, a copy of which is attached to and made a part of the policy, constitute the entire contract.”
On the back outer cover of the policy, in prominent type, appears the following:
“NOTICE TO POLICYHOLDER
“Please read your policy, including the copy of the application which is attached, promptly upon its receipt.”
This policy was issued to the insured approximately two months before he died. There is no allegation or evidence that it was not in his possession before his death.
In none of the cases cited by Plaintiff was it urged or alleged that the application was attached to the policy; or that the application contained a notice to the insured to examine and read the policy; or that there was an affirmative duty upon the insured to read the application, thus charging him with knowledge of the material misrepresentations therein.
In Telford v. New York Life Ins. Co., supra, the court was careful to specifically state that the insurer could not rely upon the falsity of answers written by its own agent where the insured had no knowledge his answers were not correctly recorded.
The applicable rule of law concerning constructive notice by the insured of false answers contained in the application is set forth in Couch on Insurance 2d as follows:
“By the majority view, the insured is bound by misstatements appearing in an application attached to the policy delivered to and retained by him. That is, by accepting a policy which he has had the opportunity of examining, he becomes bound by misrepresentations inserted therein, or in the application which is made a part thereof, by the insurer’s own agent, for the insured is under a duty to read over an application attached to the policy, particularly when a policy provision so requires. A factor inclining the court to the *906 adoption of the majority view is the circumstance that in the given case the fraud is such that it could have been easily detected by the insured, had he read the copy. It has even been said that by retaining the policy without protest the insured becomes a party to the fraud practiced by the insurer’s agent upon the insurer.
“The majority rule is applied even though the insured is unable to read or write. In such case it is incumbent upon the insured to have the application and policy read or explained to him upon receiving it from the insurer.” Couch on Insurance 2d, § 35:211.
See New York Life Ins. Co. v. Fletcher, 117 U.S. 519, 6 S.Ct. 837, 29 L.Ed. 934; New York Life Ins. Co. v. Stewart, 69 F.2d 957 (5th Cir. 1934).
We agree with the following conclusion of the Trial Court:
“The decedent, Frank Stugest, had the policy in his possession for about two months and he must be charged with having had constructive — if not actual — knowledge of the falsity of the answers to the questions as to his state of health prior to the date of the application. The falsity of the answers— if in fact they were false — must be imputed to the decedent and thus prevents the plaintiff from recovery under the policy contract.”
Too much emphasis need not be placed on the fact that the agent, whether deliberately or inadvertently, gave the negative answers to the questions involving the insured’s health, in view of the fact that, if the correct answers were given, the policy admittedly would never have been issued. Neither the insured nor the beneficiary therefore suffered any loss except the premiums, which will be returned. There is no showing that other life insurance was •cancelled on the strength of the policy here; nor is there evidence that other life insurance was obtainable.
For the reasons stated above, the judgment of the Trial Court in favor of Defendant, Metropolitan Life Insurance Company and against Plaintiff, Mrs. Camille Stugest, dismissing Plaintiff’s suit and reserving to Plaintiff the right to recover the amount of premiums paid, $13.04, which has been deposited in the registry of the court, is affirmed; Plaintiff to pay costs in both courts.
Affirmed.